UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

Civil Action No. 1:23-cv-00486 (CJN)

**MEMORANDUM OPINION**

The Heritage Foundation submitted a three-part FOIA request to the Federal Bureau of Investigation. The FBI treated those three parts as three separate FOIA requests; informed Heritage that it would not release the information sought in two of them; and provided no answer as to the third. Heritage sued. The government moves for summary judgment, arguing that Heritage failed to exhaust its administrative remedies as to the two denials (and the denial of a fee waiver) because it did not administratively appeal them. Heritage responds that it constructively exhausted its remedies because the government did not timely respond to the third part of its request. The Court agrees with Heritage and therefore denies the government's motion.

**I.    Background**

**A. Legal Background**

FOIA requesters generally must exhaust administrative appeal remedies before coming to federal court. *See Citizens for Responsibility and Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013) ("*CREW*"). "To trigger the exhaustion requirement, an agency must make and communicate its 'determination' whether to comply with a FOIA request—and communicate 'the reasons therefor'—within 20 working days of receiving the request, or within 30 working days in

1

'unusual circumstances.'" *Id.* (quoting 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i). The Court of Appeals has held that an agency has made the required "determination" once it "inform[s] the requester of the scope of the documents the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.* at 186. If the agency issues such a determination within the statutory timeframe, the requester must appeal that decision within the agency's internal appeal process before it can come to federal court.

But if the agency does not respond to the FOIA request within the statutory timeframe, the requester is considered to have constructively fulfilled the exhaustion requirement. *See* 5 U.S.C. § 552(a)(6)(C)(i). In the language of the statute, if the agency fails to issue a determination within "the applicable time limit[s]" to "[a]ny person making a request," the requester "shall be deemed to have exhausted his administrative remedies with respect to such request." *Id.*

It is worth noting that the Court of Appeals has cut back on that seemingly clear text. Even if the agency has failed to "comply with the applicable time limit provisions," a requester is not "deemed to have exhausted his administrative remedies," *id.*, "if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed," *Oglesby v. Dep't of the Army*, 920 F.2d 57, 63 (D.C. Cir. 1990). We are thus left with this rule for constructive exhaustion: A requester is deemed to have exhausted his administrative remedies with respect to a request and can sue the agency, if at the time of the suit, (1) it has been more than 20 (or sometimes 30) working days since the agency received the request and (2) the agency has not "inform[ed] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold," *CREW*, 711 F.3d at 186.

### B. Factual & Procedural Background

1. On September 13, 2022, Heritage sent a FOIA communication to the FBI asking for the following records:

2

> 1. Records sufficient to establish the total number of labor hours validated in WebTA by Federal Bureau of Investigation special agents assigned to the Washington Field Office from January 6, 2021 to April 6, 2021.
>
> 2. Records sufficient to establish the total number of labor hours validated in WebTA by Federal Bureau of Investigation, Washington Field Office special agents from January 6, 2021 to April 6, 2021 attributed to time investigating any and all matters related to the riot of January 6, 2021; to include but not limited to investigative hours attributed to 176 and/or 89B.
>
> 3. Any and all records pertaining to Federal Bureau of Investigation, Washington Field Office special agents being required to work overnight shifts pursuant to [the] January 6, 2021 riot from January 6, 2021 to April 6, 2021.

ECF 13 at 13. The FBI assigned a different FOIA request number to each part of Heritage's submission, and by October 3rd had "sent a separate letter for each subject which notified Plaintiffs of the assigned FOIA requests numbers for each subject." ECF 13-1 at 4.

The FBI responded to the second and third components of the submission before Heritage filed suit. On November 21, 2022, the FBI sent Heritage a letter captioned with the FOIA request number the FBI had assigned to the second part of Heritage's request, stating that the agency would not provide the requested information and was "administratively clos[ing]" the request because "FOIA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data." ECF 13-1 at 41. The letter also explained Heritage's procedural rights, including its ability to administratively appeal the decision. *Id.* The FBI sent a nearly identical letter captioned with the third part's FOIA request number on November 29, 2022. *See* ECF 13-1 at 46.

Along with seeking records, Heritage also requested a fee waiver. The FBI responded to that request on September 27, 2022, well before Heritage sued; the agency denied the fee waiver request on the grounds that the statutory requirements for the waiver were not satisfied. ECF 13-1 at 25.

2.      Instead of administratively appealing any of those adverse responses, Heritage filed this action on February 22, 2023, taking issue with (for our purposes) the FBI's refusal to provide the records requested under parts two and three of its request and the requested fee waiver. The FBI moves for summary judgment, arguing that the Court should not adjudicate any of Heritage's claims because Heritage did not exhaust its administrative remedies as to the denials.

Heritage counters that it has constructively exhausted its administrative remedies because it did not receive a "determination" on its request as a whole before it filed suit: Heritage did not receive a *CREW*-compliant response regarding the documents it seeks under its first ask, which means it was not fully informed of "the scope of the documents the agency will produce, as well as the scope of the documents the agency plans to withhold," 711 F.3d at 186.[1] In Heritage's view, its "request"—with respect to which administrative remedies "shall be deemed to [have been] exhausted" by the government's failure to issue a timely determination, 5 U.S.C. § 552(a)(6)(C)(i)—is its entire FOIA submission. And because the FBI did not issue a determination as to every part of Heritage's submission before this suit, Heritage contends that it constructively exhausted its administrative obligations as the entire submission.

The government responds that each individual ask within the FOIA submission can be considered a "request." Thus, in the government's view, when the FBI assigned different request numbers to each part of Heritage's submission and issued a determination as to two of those parts, it triggered Heritage's obligation to administratively appeal those determinations before bringing the dispute to court.

---

[1] A few weeks after Heritage sued, the government completed its release as to the first part of Heritage's submission, and Heritage "do[es] not dispute the adequacy of the search" as to that part. ECF 22 at 1 n.1.

## II.     Analysis

The question presented by the government's motion is whether "request" in § 552(a)(6)(C)(i) refers to a requester's overall FOIA request (*i.e.*, the overall submission) or whether it refers to the individual requests contained in the submission. If "request" refers to the overall FOIA submission, Heritage did constructively exhaust its administrative remedies because (1) the government's failure to indicate its position on the first portion of Heritage's submission means that the government did not issue a *CREW*-compliant determination as to Heritage's request as a whole before Heritage sued; and (2) the whole submission—including parts two and three and the fee waiver—is the "request" as to which Heritage is deemed to have exhausted its administrative remedies by the government's failure to issue a timely determination. If "request" instead refers to individual requests contained within the submission, then the government's denial of the second and third asks triggered the exhaustion requirement as to those parts, and Heritage was obligated to administratively appeal the denials as to those parts before bringing this suit.

As a matter of ordinary English, both views are plausible. On one hand, a "request" can be "an instance of asking for something"—as when a requester sends a FOIA submission to the government asking for various categories of records. *Request* (noun, sense 1.a), OXFORD ENGLISH DICTIONARY (March 2025). On the other, a "request" can be "the thing which is asked for"—for example, one category of records included in a larger FOIA submission. *Id.*

FOIA uses the word "request" throughout its provisions, and many uses could refer just as easily either to an overall submission or to individual asks within a submission. *E.g.*, 5 U.S.C. § 552(a)(6)(B)(ii) ("In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records … ."). But at least four provisions make more sense if they are interpreted to use the word "request" to refer to an overall FOIA submission.

5

While no one provision is dispositive, in combination they suggest that Heritage's interpretation of "request" is the better one.

1.  5 U.S.C. § 552(a)(6)(B)(iv) allows an agency to "promulgate regulations … providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute *a single request* … and the requests involve clearly related matters" (emphasis added).[2] It makes little sense to think of this provision as allowing the government to aggregate multiple parts of one submission into a single "request"; it makes more sense to read it as permitting an agency to aggregate several separate FOIA submissions into a single one.

2.  5 U.S.C. § 552(e)(1) requires that the government annually report certain FOIA-related statistics, including "the number of requests for records pending," "the number of requests for records received … [and] processed," and "the average number of days … [taken] to respond to a request beginning on the date on which the request was received." That statistical data would be skewed if the government had to (or at least could) count multiple parts of a single submission as multiple requests—and even more skewed if different agencies could count the parts in different ways, or if a particular agency counted only some multi-part submissions as multiple requests. Section 552(e)(1) makes much more sense if read to require reporting based on one consistent and objective way to quantify "requests" across and within different agencies—such as the number of overall submissions each agency has received and resolved.

3.  5 U.S.C. § 552(a)(6)(A) requires that the government produce records "upon any request" within a certain number of days after "the request is first received by the appropriate

---

[2] The FBI has promulgated regulations providing for aggregation, using language nearly identical to that found in § 552(a)(6)(B)(iv). *See* 28 C.F.R. 16.5(d) (2017). It has not promulgated any regulations or written guidelines as to splitting requests. *See* ECF 13-1 at 5.

component of the agency." The most natural interpretation of the date that a request "is first received" is the date the government receives a communication—that is, an overall FOIA submission—rather than the date it receives the contents of that communication.

4. 5 U.S.C. § 552(a)(6)(A)(ii)(I) allows the government to "make *one request* to the requester for information and toll the 20-day [response] period while it is awaiting such information" (emphasis added). If "request" referred to individual inquiries within a communication, this provision would allow the government to send a requester only a single question in response to a broader FOIA communication. The better reading of that provision (and likely the one the government would typically prefer) is that it allows the government to toll the response period while it seeks clarification, in one omnibus communication, of any parts of a FOIA submission that the government is uncertain about.

Again, it is the combination of all four of these provisions, not any one in isolation, that leads the Court to conclude that Heritage's interpretation is the better one. But common usage also supports this reading. Published opinions routinely refer to individual FOIA submissions containing multiple asks as a single request. In *CREW* itself, for example, the requester sought four disparate types of records. *Citizens for Responsibility and Ethics in Wash. v. FEC*, 839 F. Supp. 2d 17, 20 (D.D.C. 2011). The Court of Appeals described the requester's communication as "a FOIA request … seeking several categories of records," and it referred to the government's response as being sent "the day after the FOIA request was received." *CREW*, 711 F.3d at 183.[3]

---

[3] *CREW* is far from the only example. Take *Oglesby v. Department of the Army*, 920 F.2d 57 (D.C. Cir. 1990), in which the plaintiff sent six FOIA submissions to six agencies, each coincidentally seeking six categories of records. *Id.* at 60. The Court of Appeals referred to the six submissions collectively as "FOIA requests," *id.*, but when analyzing the submissions that the plaintiff sent to each agency, it referred to each as either "a request" or "his request," *id.* at 66–71; *accord FBI v. Abramson*, 456 U.S. 615, 618 & n.2 (1982) (referring to a submission seeking six categories of records as "a request pursuant to FOIA").

For its part, the government appears to argue that even assuming Heritage's interpretation of § 552(a)(6)(C)(i) were correct, prudential concerns allow the government essentially to split a single submission into several. *See* ECF 13-1 at 5. But the government points to nothing in FOIA that gives it that power—and in fact, FOIA *does* give agencies the power to combine multiple requests into one, *see* 5 U.S.C. § 552(a)(6)(B)(iv), yet says nothing about splitting one request into multiple.

Put simply, "the FOIA requester is the 'master' of the FOIA request," *People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006); it is the requester who gets to decide whether to bundle multiple asks into one FOIA request or spread them out across several. Once the requester has made that decision, FOIA requires that the government address the entire request, not just parts of it, within 20 (or 30) working days. 5 U.S.C. § 552(a)(6); *cf. Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("The agency was bound to read [the FOIA request] as drafted, not as [the] agency officials … might wish it was drafted."). Here, by the time Heritage sued, the government had not determined whether Heritage would "receive all the documents" it sought, *CREW*, 711 F.2d at 186, because it had not yet responded to the first part of Heritage's request. It therefore cannot rely on FOIA's exhaustion requirement to prevent Heritage from litigating now.

One argument remains: The government warns that this conclusion could allow requesters to strategically circumvent the administrative appeal process. The government's worry is that a requester could, by bundling a straightforward inquiry with a much more complicated one, make it impossible for the government to respond to the request as a whole in time. *See* ECF 23 at 3–4. For two reasons, the Court is not persuaded. First, courts can cross that bridge when they come to

---

Indeed, it is so natural to refer to an overall FOIA submission as a "request" that even the government's own briefing and materials repeatedly do so. *See, e.g.*, ECF 13 at 14 ("The FBI … assigned a FOIA request number to each of the three subjects *in Plaintiffs' request*.") (emphasis added); ECF 13-1 at 3 ("Plaintiffs submitted a *three-part FOIA request* … .") (emphasis added).

it.  In this case, however, the three parts of Heritage's request are highly related and do not suggest gamesmanship.  Second, within statutory boundaries, agencies set the procedures that requesters must follow to trigger the government's FOIA obligations.  *See* 5 U.S.C. § 552(a)(3)(A).  If requesters begin engaging in strategic behavior to circumvent FOIA's exhaustion requirements, the government may be able to respond by changing its regulations.[4]

\* \* \*

By the time Heritage filed this suit, the government had not made a determination as to the first part of Heritage's FOIA request, and so it did not meet the time limits prescribed by § 552(a)(6) as to Heritage's request as a whole.  Accordingly, Heritage is deemed to have constructively exhausted its administrative remedies and may proceed with this suit.  5 U.S.C. § 552(a)(6)(C)(i).  The Court therefore will, in its accompanying order, deny the government's motion for summary judgment and order the Parties to submit a joint status report proposing next steps in this litigation.

DATE:  March 25, 2025

*[signature]*
CARL J. NICHOLS
United States District Judge

---

[4] The Court does not decide here which procedures agencies are allowed to require under FOIA, but the government could consider, for example, limiting the number or types of asks that requesters can bundle into one request.